**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marc A. Wichansky, | No. CV-13-01924-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Zoel Holding Company Incorporated, et al., | |
| Defendants. | |

Defendants David Zowine, Karina Zowine, Charles Johnson, Martha Leon, Susan Collier, Sarah Shanahan, Pat Shanahan, Zoel Holding Company, Inc., and MGA Home Healthcare, LLC (collectively "Defendants") have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 24. The motion has been fully briefed (Docs. 24, 31, 40, 45, 46), and no party has requested oral argument. For the reasons that follow, the Court will grant Defendants' motion.

**I.     Background.**

Plaintiff Marc Wichansky filed this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, on September 19, 2013, alleging that Defendants defrauded the United States government through intentional overbilling to Medicaid. Doc. 1. In 2006, Wichansky and Defendant David Zowine founded Zoel Holding Company, Inc. ("Zoel"), which specializes in employee placement services. Wichansky was the chairman and president of Zoel and its wholly owned subsidiaries until Zowine acquired Wichansky's stock in a May 2012 shareholder buyout proceeding. Wichansky

previously owned a 50% interest in the company and his duties included administrative operations and management of day-to-day business affairs. Doc. 24 at 3. Zowine ran sales operations, owned a 50% interest in the company, and acted as Zoel's secretary and vice president. *Id*.

Beginning in late 2010, the relationship between Wichansky and Zowine "rapidly deteriorated." Doc. 24 at 3. On January 26, 2011, Wichansky sent Zowine an e-mail terminating his employment with Zoel. Wichansky then filed a lawsuit in Maricopa County Superior Court, requesting a declaratory judgment that Zowine's termination was lawful and effective.[1] Doc. 24 at 3. On February 1, 2011, Wichansky sent Zowine a $950,000 check along with a promissory note in the same amount and a letter notifying Zowine that Wichansky had unilaterally exercised his right to purchase Zowine's interest in Zoel under a Cross-Purchase Agreement that allowed Zoel to buy out a shareholder whom Zoel ceased to employ. *Id*. The Superior Court held an evidentiary hearing and concluded that Wichansky lacked authority to terminate Zowine or acquire his shares in Zoel. *Id*. Wichansky then filed a petition to dissolve Zoel, apparently unaware that this would trigger Zowine's statutory right to purchase Wichansky's shares under A.R.S. § 10-1434. *Id*. at 4. The Superior Court held a five-day evidentiary hearing to determine the value of Wichansky's shares, and ultimately permitted Zowine to purchase the shares on terms set by the court. *Id*.

Wichansky asserts that, during this first proceeding in Maricopa County Superior Court, he made a series of discoveries indicating that from November 2007 through August 2009 Zowine and several employees of HHL (a subsidiary of Zoel) had engaged in fraud with respect to bills submitted to the Arizona Department of Economic Security's ("DES") Division of Developmental Disabilities ("DDD"), a state agency

---

[1] Defendants request that the Court take judicial notice of Wichansky's previous court filings in both Maricopa County Superior Court and this Court. The Court may take judicial notice of public court records. *See, e.g.*, *United States v. $2,164,341 in US Currency*, No. CV12-0105, 2013 WL 2458757, at *3 (D. Ariz. 2013). The Court will therefore take judicial notice of Wichansky's previous court filings in *Wichansky v. Zowine,* No. 2:13-CV-01208 (D. Ariz. June 14, 2013), and *Zoel Holding Co. v. Zowine,* No. CV2011-002120 (Ariz. Jan. 26, 2011).

funded by the federal government. Wichansky also asserts that Zowine intentionally lured Wichansky into dissolving the company so that Zowine could take over and end an investigation Wichansky had launched into these very billing discrepancies at HHL. Doc. 1 at 10.

On June 14, 2013, Wichansky filed a lawsuit ("First Federal Case") in this Court against Zoel, Zowine, and several of the employees named in this action (including several employees who are not named here), raising numerous state and federal claims concerning Defendants' alleged retaliation against Wichansky. *See Wichansky v. Zowine,* No. 2:13-CV-01208 (Complaint, June 14, 2013). Wichansky's federal claims included a retaliation claim under the FCA, claims under the Computer Fraud and Abuse Act, and a claim for federal securities fraud. Doc. 24 at 5.

The present *qui tam* action alleges that Defendants defrauded the United States government by submitting false claims to the DDD, a state agency funded by the federal government which provides services to disabled state residents. Doc. 1 at 2. Wichansky alleges that Defendants deliberately overbilled DDD each month for healthcare services, intentionally overbilled third-party liability claim-payors ("TPLs") for healthcare services, willfully billed both DDD and TPLs for the same healthcare services, and purposely coded healthcare services to obtain higher reimbursements from DDD and TPLs. *Id*. at 3-4. Wichansky also alleges that Defendants conspired to conceal these fraudulent billing practices by allocating reimbursements for some patients to the accounts of other patients. *Id*. at 4.

**II.     Zoel's Settlement With Arizona.**

Defendants claim that in March 2011, Zoel self-disclosed certain billing problems to the Arizona Health Care Cost Containment System ("AHCCCS"). Doc. 24. AHCCCS investigated these billing problems and sent a "Notice of Payment Suspension" to Zoel on February 7, 2012, noting that under federal law it was "temporarily suspending all future payments" to Zoel. *Id*. (quoting Notice, Doc. 24-2 at 66). The Notice stated that "credible allegations of fraud exist with regard to your company based on our

investigation," and that AHCCCS suspected Zoel had "submitted, or caused to be submitted, claims to AHCCCS and its contracted health plans for services that were not provided as claimed for the time period of 1/1/06 to present." *Id* at 5-6 (quoting Notice, Doc. 24-2 at 66). The suspension, it explained, would continue until either AHCCCS or prosecuting authorities determined that insufficient evidence of fraud existed or legal proceedings related to the alleged fraud were completed. *Id.* at 6. Zoel appealed the AHCCCS suspension to the Arizona Office of Administrative Hearings. *Id*.

AHCCCS and Zoel reached an agreement on May 1, 2012, under which AHCCCS agreed to lift the payment suspension and Zoel agreed to deposit $1,000,000 in an escrow account to compensate AHCCCS for funds Zoel may have been overpaid. *Id*. The administrative appeal was vacated with rights reserved. *Id*.

On November 6, 2013, AHCCCS and Zoel reached a final and binding settlement agreement, which "settl[ed] and compromis[ed] all disputes arising from or related in any way to the services provided by [Zoel] and claims submitted to AHCCCS during the period January 1, 2006 to December 31, 2011. *Id.* (quoting Settlement Agreement, Doc. 24-2 at 112). As part of this settlement, Zoel agreed to pay AHCCCS $1,250,000 in restitution for all billing errors and for AHCCCS's investigative costs. *Id*. AHCCCS agreed to accept this settlement payment to resolve all transactions at issue and to release the company, in full, for any claims related to services for the relevant time period. *Id*. In addition, AHCCCS noted that Zoel had cooperated throughout the investigation. AHCCCS stated that it "found no evidence that [Zoel] committed fraud" or "acted with intent to defraud." *Id.* at 6-7 (quoting Settlement Agreement, Doc. 24-2 at 112).

**III.   Analysis.**

Defendants make three arguments: (1) the government, through AHCCCS, has already investigated and settled all transactions that underlie Wichansky's *qui tam* allegations, thus barring this FCA case under 31 U.S.C. § 3730(e)(3) (Doc. 24 at 5); (2) this case is barred by 31 U.S.C. § 3730(e)(4) because it alleges information that was previously publicly disclosed (*id*. at 11); and (3) the claims in this case are not pled with

the particularity required by Rule 9(b) (*id*. at 12). The Court will address the first two arguments and need not address the third.

### A. AHCCCS Investigation and Settlement.

Defendants argue that Wichansky's complaint must be dismissed because a *qui tam* action cannot succeed where the government is already a party in a civil suit or administrative proceeding based on the same allegations. Doc. 24 at 7. The relevant statutory language reads: "In no event may a person bring [a *qui tam* action] based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." 31 U.S.C. § 3730(e)(3). Defendants argue that the AHCCCS proceeding constituted such a "civil monetary penalty proceeding." Doc 24 at 7.

Defendants rely on *Foundation for Fair Contracting, Ltd. v. G&M E. Contracting*, 259 F.Supp.2d 329 (D.N.J. 2003), a *qui tam* lawsuit preceded by a United States Department of Labor ("DOL") investigation into the alleged false claims. The DOL investigation was completed a year after the relator's filing and resulted in the defendants paying back wages to the government. *Id*. at 333. The district court dismissed the *qui tam* action for lack of subject matter jurisdiction, finding that the DOL investigation constituted an "administrative civil money penalty proceeding" under § 3730(e)(3). *Id*. The court held that allowing the *qui tam* suit to proceed would "provide for a second recovery by another entity despite the resolution of the government's investigation into the very same transactions, in contravention of the statutory purpose." *Id*.

Defendants argue that the AHCCCS investigation is like the DOL investigation in *Fair Contracting*, and that allowing Wichansky to proceed with his suit risks a second recovery despite the previous resolution by AHCCCS. Defendants note that AHCCCS investigated the alleged billing fraud two years before Wichansky filed this action and that Zoel paid $1,250,000 in full restitution. Doc. 24 at 9.

The United States argues that *Fair Contracting* is distinguishable from the present case because the DOL is a federal agency. Doc. 31 at 8. The United States argues that

- 5 -

the first section of the FCA that refers to the "Government" uses the phrase "United States Government." *See* 31 U.S.C. § 3729(a)(1). It is reasonable to infer, the United States argues, that later FCA references to "Government" were also intended to mean the "United States Government" as referenced in § 3729(a)(1).

The Court agrees. The terms "Government," "United States," and "United States Government" are used interchangeably throughout the relevant portions of the FCA. *See*, *e.g.*, 31 U.S.C. § 3729(a)(1)(G) ("Government" and "United States Government"); § 3729(a)(2)(A) ("United States"); § 3729(a)(2)(C) ("United States" and "Government"); § 3729(a)(3) ("United States Government"); § 3729(b)(2)(A) ("United States"); § 3729(b)(2)(A)(ii) ("Government" and "United States Government"); § 3730(b)(1) ("United States Government" and "Government"); § 3730(b)(2) & (3) ("Government"); § 3730(d)(3) ("Government" and "United States"); § 37390(g) ("United States"). These provisions all clearly refer to the federal government.

The FCA also specifically authorizes the Attorney General of the United States to bring FCA actions. 31 U.S.C. § 3730(a). Many courts have held that the authority to file and settle FCA claims rests solely with the Attorney General or his designee, and that even other federal agencies lack the authority. *See Martin J. Simko Constr. v. United States*, 852 F.2d 540, 547 (Fed. Cir. 1988); *United States v. Wells Fargo Bank*, 972 F.Supp.2d 593, 607, n. 6 (S.D.N.Y. 2013); *United States v. Tech Refrigeration*, 143 F.Supp.2d 1006, 1009 (N.D. Ill. 2001); *United States ex. rel. Haskins v. Omega Inst., Inc.*, 11 F. Supp. 2d 555, 561 (D. N.J. 1998); *see also U.S. ex rel. Eisenstein v. New York*, 556 U.S. 928, 932 (2009).

The United States cites one case that is squarely on point. In *United States ex rel. Veltz v. Allegany Rehabilitation Assoc., Inc*, No. 01-CV-190S, 2011 WL 1042194 (W.D.N.Y. 2011), the district court held that the New York Department of Health had no authority to settle FCA claims for wrongful Medicaid billing. On a related note, the Ninth Circuit has held that states cannot bind the federal government in settlements. *See, e.g., United States v. Sparks*, 87 F.3d 276, 279 (9th Cir. 1996).

1    Defendants argue that where federal law expressly delegates responsibility for the investigation and collection of overpaid moneys to a State, that State's agency qualifies as "the Government" for purposes of § 3730(e)(3). Doc. 45 at 6. Defendant's support this assertion with a policy argument – that to hold otherwise would deprive service providers of finality in resolving billing disputes. Doc. 45 at 7. The United States responds, persuasively, that service providers may achieve finality simply by including the federal government in an investigation or lawsuit. Doc. 46 at 4. The United States also counters with policy arguments of its own – that states often bring Medicaid fraud or enforcement actions that are limited in scope, location, or time period and that the FCA statute of limitations exceeds that of some states. Doc. 46 at 5. Permitting state actions to foreclose federal FCA actions would unduly restrict the intended scope of the FCA. Additionally, the United Sates notes that the federal government and the State of Arizona are two distinct sovereigns with different enforcement mechanisms for investigating and prosecuting fraud and Medicaid abuse. Doc. 31 at 8.

The Court concludes that "the Government" in 31 U.S.C. § 3730(e)(3) means the federal government. This conclusion is supported by the FCA's use of "Government," "United States," and "United States Government" interchangeably, the FCA's exclusive delegation of authority to the United States Attorney General, *Allegany Rehabilitation Assoc.*, and the policy arguments made by the United States. Zoel's settlement with AHCCCS does not bar this action under § 3730(e)(3).

  **B.**  **Public Disclosure Bar.**

    **1.**  **May the Court Consider Factual Material?**

Defendants' motion, although styled as a motion to dismiss under Rule 12(b)(6), attaches factual material. Doc. 24-2. Wichansky does not object to the Court's consideration of this material, and instead submits factual material of his own. Doc. 40-1. Normally, a court will not consider factual material in ruling on a motion to dismiss without first converting the motion to one for summary judgment. Fed. R. Civ. P. 12(d). In this case, however, the Court concludes that factual materials may be considered.

- 7 -

1     Defendants argue that Plaintiff's claim is barred by the public disclosure bar found
2 in 31 U.S.C. § 3730(e)(4).  Before amendments in 2010, this bar was jurisdictional.  The
3 language of the statute provided that a court had no jurisdiction to hear cases based on
4 information that was previously publicly disclosed, and the Supreme Court held that this
5 language deprived courts of subject matter jurisdiction.  *Rockwell Int'l Corp. v. United*
6 *States*, 549 U.S. 457, 467-68 (2007).  Thus, a court confronted with a public disclosure
7 argument under § 3730 was deciding whether it had subject matter jurisdiction.  And in
8 deciding a factual attack on subject matter jurisdiction, courts "'need not presume the
9 truthfulness of the plaintiffs' allegations' and may 'look beyond the complaint . . .
10 without having to convert the motion into one for summary judgment.'"  *U.S. ex rel.*
11 *Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1200 n. 2 (9th Cir. 2009) (quoting *White*
12 *v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000)).

13     Courts generally have held, however, that the 2010 amendments to the FCA do not
14 apply retroactively to conduct that occurred before 2010.  The relevant inquiry is when
15 the underlying fraud occurred, not when the complaint was filed.  *See United States ex*
16 *rel. May v. Purdue Pharma L.P.,* 737 F.3d 908, 916 (4th Cir. 2013) ("The retroactivity
17 inquiry looks to when the underlying conduct occurred, not when the complaint was
18 filed."); *U.S. ex rel. Parikh v. Citizens Medical Center*, No. 6:10–CV–64, 2014 WL
19 4364875 (S.D.Tex. 2014); *see also U.S. ex rel. Harris v. Lockheed Martin Corp.*, 905
20 F.Supp.2d 1343 (N.D. Ga. 2012).  Here, the alleged fraud occurred between November
21 2007 and August 2009.  Doc. 1 at 2.  Thus, the 2010 amendments do not apply, the public
22 disclosure bar remains jurisdictional, and the Court may consider materials outside the
23 complaint in deciding Defendants' factual attack on jurisdiction.

24     Even if the Court were to conclude that the 2010 amendments apply and the public
25 disclosure bar is no longer jurisdictional, the Court could consider the factual materials
26 and treat this motion as one for summary judgment without further notice to the parties.
27 As the Ninth Circuit has explained, when a court transforms a motion to dismiss to a
28 motion for summary judgment, "[w]e do not require strict adherence to formal notice

requirements. Rather, we examine the record in each case to determine whether the party against whom summary judgment was entered was fairly apprised that the court would look beyond the pleadings and thereby transform the 12(b) motion to dismiss into one for summary judgment." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004) (quotation marks and citations omitted). The Ninth Circuit has further explained that "a represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment." *Id.* (quotation marks and citations omitted).

As already noted, Wichansky did not object to the factual material submitted with Defendants' motion and instead submitted factual material of his own. Doc. 40-1. Applying the *Olsen* case, the Court concludes that Wichansky had notice that the Court may use those materials to decide this motion, requiring that it be transformed to a motion for summary judgment. Thus, even if the public disclosure bar is not viewed as jurisdictional, the Court may consider the factual materials submitted by the parties and treat this as a motion for summary judgment.

### 2.   **Public Disclosure Analysis.**

Defendants argue that Wichansky's claims are barred by § 3730(e)(4) because the complaint alleges information that was publicly disclosed before this lawsuit was filed. Section 3730(e)(4) provides:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed —
>
> * * *
>
> (iii)   from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4).[2]

The *qui tam* provisions of the FCA provide financial incentives for insiders with knowledge of fraud on the government to come forward with that knowledge. *Seal 1 v. Seal A*, 255 F.3d 1154, 1158 (9th Cir. 2001). "The compensation available to relators, however, encourages parasitic lawsuits in which those with no independent knowledge of fraud use information already available to the government to reap rewards for themselves without exposing any previously unknown fraud." *Id.* To protect against such lawsuits, Congress enacted the public disclosure bar. *Id.* at 1158-59.

Defendants argue that, several months prior to the filing of this action, the Phoenix New Times printed a story on the First Federal Case which included allegations of the same fraudulent billing practices underlying this action. Doc. 24 at 11-12. They claim that this news article represents a disclosure by the "news media" under § 3730(e)(4) and that Wichansky does not constitute the "original source" of the information within the meaning of the statute.

In order for a *qui tam* suit to be "based upon" a prior public disclosure, the publicly disclosed facts must be substantially similar to the relator's allegations. *See* 31 U.S.C. § 3730(e)(4) ("substantially the same allegations or transactions"); *United States v. Horizon Health Corp. et al.*, 565 F.3d 1195, 1199 (9th Cir. 2009); *United States ex rel. Lujan v. Hughes Aircraft Co.,* 243 F.3d 1181, 1189 (9th Cir. 2001). The public disclosure must contain either direct allegations of fraud or report on the critical elements of the fraudulent transaction. *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). Additionally, the public disclosure must contain facts "sufficient to put the [federal] government on notice of the likelihood of related fraudulent activity. *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F. 3d 503, 512 (6th Cir. 2009); *U.S. ex rel. Davis v. Dist. of Columbia*, 679 F.3d 832, 836-37 (D.D.C. 2012).

---

[2] This section suggests that the public disclosure bar does not apply if it is "opposed by the Government." 31 U.S.C. § 3730(e)(4). The filing in this case addresses the § 3730(e)(3) arguments discussed above, but expressly states that the United States "takes no position on arguments or issues" beyond the scope of its memorandum. Doc. 31 at 1 n.1. The United States has not opposed the application of § 3730(e)(4).

1       The New Times article was published online on June 17, 2013. Doc. 24-2 at 115-17. The article described the dispute between Wichansky and Zowine, asserting that "Wichansky began the feud innocently, he claims, by ordering an internal investigation into financial discrepancies. What the probe turned up, he alleges, was evidence that Zowine and company employees loyal to Zowine had been fleecing clients including the state of Arizona." Doc. 24-2 at 115. The third paragraph of the article says "(See below for full lawsuit)," and the end of the article contains this line: "Click here to read the lawsuit filed by Marc Wichansky." *Id.* at 115, 117. Readers of the article could click on the link and read the complaint filed by Wichansky in the First Federal Case. That complaint contained a detailed recounting of Wichansky's discovery of the healthcare billing fraud at issue in this case. It alleged that Zowine and others engaged in billing fraud of "hundreds of thousands of dollars or more." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, Doc. 1, ¶ 8. It alleged that the fraud was perpetrated on DES and DDD. *Id.*, ¶ 136. It alleged "instances of overbilling, phantom payments, improper rebilling, and payments from one payor being applied to invoices of a different payor." *Id.*, ¶ 139. It even alleged a retaliation claim under the FCA. *Id.*, ¶¶ 183-89.

        The Court concludes that "substantially the same allegations or transactions as alleged in [this] action . . . were publicly disclosed" in the New Times article and the linked complaint in the First Federal Action. 31 U.S.C. § 3730(e)(4)(A). Wichansky does not argue otherwise. He does not dispute that a sufficient public disclosure occurred. *See* Doc. 40.

        Wichansky instead argues that the public disclosure bar does not apply because he was the original source of the information. Doc. 40 at 3-5. The FCA provides a very precise definition of "original source" for purposes of the public disclosure bar:

> (B)     For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly

>disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4).  Thus, to qualify as an original source, Wichansky must either have disclosed the basis for his fraud allegations to the government before publication of the New Times article or provided additional independent and material information to the government before the filing of this lawsuit.

Wichansky argues that the filing of the First Federal Case constituted a disclosure to the government for purposes of § 3730(e)(4)(B)(i).  Doc. 40 at 4.  But he cites no authority to support this assertion, and he provides no explanation as to how allegations in a civil case to which the government was not a party can somehow constitute a disclosure to the government for purposes of the FCA.  Doc. 40 at 4.

Wichansky also alleges that in March 2011, years before he filed the First Federal Case, he spoke with AHCCCS Inspector General David Botsko about potential fraud within Zoel.  Doc. 40 at 4.  Defendants correctly note, however, that Wichansky cannot credibly maintain, as he does, that AHCCCS is not "the Government" for purposes of § 3730(e)(3), while arguing that it is "the Government" for purposes of § 3730(e)(4), the very next section of the statute.  *Id*.  In any event, as previously determined, the word "Government" as used in § 3729 and § 3730 means the federal government, not state agencies.   Thus, disclosure to AHCCCS did not constitute disclosure to "the Government" for purposes of § 3730(e)(4)(B).  *See U.S. ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 334-35 (6th Cir. 1998) (relator's disclosure to Michigan Employment Security Commission and Michigan Department of Public Health did not constitute disclosure to "the Government" for purposes of § 3730(e)(4)(B)).

Finally, Wichansky alleges that he self-reported the billing fraud to the FBI and IRS in 2011.  Doc. 40 at 4.  In support of this assertion, Wichansky cites only the deposition of Inspector General Botsko.  *Id*. at 4-5.  Although Botsko testified that *he* had contact with the FBI and IRS related to the fraud allegations, he did not testify that Wichansky made disclosures to these federal agencies.  In fact, Botsko testified that he

1  "had no idea" whether Wichansky spoke to anyone at the FBI and, in the portions of the
2  deposition transcript provided by the parties, did not say that Wichansky made any
3  disclosures to the IRS. Doc. 40-1 at 3-5; Doc. 45-1 at 2-5.

4  Botsko did testify that he generally asked a "Mr. Callagy" whether Botsko could
5  share documents with other law enforcement agencies. Doc. 40-1 at 94 ("asking him
6  about whether I could give any documents to anybody came up very early in the
7  conversation, so that I would know what I was permitted to do and not to do with any
8  documents I received if I was working with any outside agencies"); *see also id*. at 97 ("I
9  was informed that we could give it to law enforcement and government agencies that – it
10 was like a general statement."). Botsko testified that he called the FBI to ask if it was
11 looking into the billing fraud, and later provided the FBI with documents. *Id*. at 97. The
12 deposition does not identify Mr. Callagy or describe his role, but the Court notes that
13 Wichansky is represented in this lawsuit by Callagy Law from New Jersey. Assuming
14 Botsko is referring to a Mr. Callagy who was Wichansky's counsel, Botsko still did not
15 testify that Callagy asked or directed him to provide information to federal authorities.
16 Botsko testified that he asked Callagy generally where he could disseminate documents
17 because "I'm very cautious, you know, about attorney-client privilege." *Id*. at 94.

18 Botsko also noted that he attended a meeting with the IRS a few weeks before his
19 deposition at which "billing patterns" were discussed, and implied that Wichansky may
20 have been present. *Id*. at 94. But Botsko did not describe the purpose of the meeting,
21 who requested it, who provided information, or what information was disclosed. *Id*.

22 Wichansky bears the burden of showing by a preponderance of the evidence that
23 he satisfies the FCA definition of "original source." *U.S. ex rel. Meyer*, 565 F.3d at 1199;
24 *U.S. ex rel. Bly-Magee v. Premo*, 470 F.3d 914, 916-17 & n.2 (9th Cir. 2006); *U.S. ex rel.*
25 *Biddle v. Board of Trustees of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 540 (9th Cir.
26 1998). The Ninth Circuit has, in other cases, looked to allegations in the complaint and
27 other evidentiary materials in deciding whether a relator has carried this burden. *U.S. ex*
28 *rel. Meyer*, 565 F.3d at 1202 (reviewing complaint and declarations); *U.S. ex rel. Bly-*

*Magee*, 470 F.3d at 917 (reviewing declaration). The only evidence provided by Wichansky – Botsko's testimony – does not show that Wichansky "voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based," or "voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). Because Wichansky has not carried his burden of showing that he is an original source as defined by the FCA, the Court must dismiss this action.

On the basis of the cases cited above, the Court concludes that the public disclosure bar remains jurisdictional and therefore dismisses this case for lack of subject matter jurisdiction. In the alternative, the Court transforms the motion to dismiss to a motion for summary judgment and grants summary judgment to Defendants on the basis of the public disclosure bar.

**IV. Leave to Amend.**

Wichansky seeks leave to amend "if the Motion to Dismiss is granted on the basis that Relator failed to properly allege the fraudulent scheme set forth in the Complaint." Doc. 40 at 9. Because the Court has not dismissed on this basis, it will not grant leave.

Even if Wichansky's request could be construed as a broader motion to amend, the motion would be denied. As shown above, Wichansky does not dispute that the New Times article and the linked complaint from the First Federal Case constituted a public disclosure sufficient to trigger the public disclosure bar, and he has failed to meet his burden of showing by a preponderance of the evidence that he is an original source as defined in the FCA. Wichansky has been afforded a full and fair opportunity to carry his burden, and has submitted evidence in an attempt to do so. The Court concludes that it lacks subject matter jurisdiction over this action or, alternatively, that Defendants are entitled to summary judgment on the public disclosure bar.

**V. Attorneys' Fees.**

Defendants argue that this Court should award attorneys' fees for defending against this *qui tam* action. Doc. 24 at 17. Defendants assert that attorneys' fees are

- 14 -

appropriate where a claim is clearly frivolous, vexatious, or for harassment. 31 U.S.C. § 3730(d)(4) (emphasis added). Although the Court has determined that dismissal is appropriate due to the public disclosure bar, it does not find that Wichansky filed his *qui tam* action frivolously or for harassment. The Court therefore denies Defendants' request for attorneys' fees.

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Doc. 24) is **granted**.
2. The Clerk is directed to enter judgment accordingly and terminate this action.

Dated this 24th day of November, 2014.

_____
David G. Campbell
United States District Judge